**F I L E D**
CLERK, U.S. DISTRICT COURT

3/10/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAM _____ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0698
    Facsimile: (213) 894-3713
    E-mail:    jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

               v.

WAYNE JOSEPH NIX,

          Defendant.

No. CR  2:22-cr-00080-MCS-1

PLEA AGREEMENT FOR DEFENDANT
WAYNE JOSEPH NIX

     1.   Subject to the approval of the Department of Justice, Tax
Division, this constitutes the plea agreement between WAYNE JOSEPH
NIX ("defendant") and the United States Attorney's Office for the
Central District of California (the "USAO") in the above-captioned
case.  This agreement is limited to the USAO and cannot bind any
other federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   Give up the right to indictment by a grand jury and,
at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Operate an Unlawful Gambling Business, in violation of 18 U.S.C. § 371; and Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1).

       b.   Not contest facts agreed to in this agreement.

       c.   Abide by all agreements regarding sentencing contained in this agreement.

       d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

       h.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

       i.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by

2

1  which to satisfy defendant's payment of the full financial

2  obligation, including referral to the Treasury Offset Program.

3       j.   Complete the Financial Disclosure Statement on a form

4  provided by the USAO and, within 30 days of defendant's entry of a

5  guilty plea, deliver the signed and dated statement, along with all

6  of the documents requested therein, to the USAO by either email at

7  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

8  Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

9  Angeles, CA 90012.

10      3.   Defendant further agrees:

11      a.   To forfeit all right, title, and interest in and to

12  any and all monies, properties, and/or assets of any kind, derived

13  from or acquired as a result of the illegal activity charged in Count

14  One of the information to which defendant is pleading guilty,

15  specifically including, but not limited to, the following

16  (collectively, the "Forfeitable Assets"):

17      i.   $108,919.80 seized on or about February 13, 2020

18  from Wells Fargo Bank account number ending '3903 held in the name of

19  defendant;

20      ii.  $49,565.70 seized on or about February 13, 2020

21  from Wells Fargo Bank account number ending '4006 held in the name of

22  Nixy Enterprises;

23      iii. $422,415.30 seized on or about February 13, 2020

24  from Merrill Lynch account number ending '7557 held in the name of

25  defendant;

26      iv.  $718,834.83 seized on or about February 13, 2020

27  from Merrill Lynch account number ending '1462 held in the name of

28  Nixy Enterprises.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

i.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements

of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

4.    Defendant admits that defendant received $1,466,947.75 of unreported income for 2017 and 2018.  Defendant agrees that:

a.    Defendant will file, prior to the time of sentencing, amended returns for the years 2017 and 2018 subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).  Payments may be made to the Clerk, United States District

Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b. Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c. Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d. Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2017 and 2018.

e. Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f. Defendant will sign closing agreements with the Internal Revenue Service prior to his sentencing date, permitting the Internal Revenue Service to assess and collect the total sum of $1,248,429.55, which comprises the additional tax liabilities ($735,015.56 and $513,413.99 for the defendant's tax years 2017 and 2018, respectively), the civil fraud penalty for each year, and statutory interest on the tax liabilities, as provided by law.

5. Defendant further agrees to cooperate fully with the USAO, the Department of Homeland Security, Homeland Security Investigations, and, as directed by the USAO, any other federal,

state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

6.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreements previously entered into by the parties dated February 27, 2020; May 5, 2020; September 29, 2020; and April 23, 2021 (the "Letter Agreements"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE USAO'S OBLIGATIONS</u>

7.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction

1  in the applicable Sentencing Guidelines offense level, pursuant to

2  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

3  additional one-level reduction if available under that section.

4      8.   The USAO further agrees:

5        a.   Not to offer as evidence in its case-in-chief in the

6  above-captioned case or any other criminal prosecution that may be

7  brought against defendant by the USAO, or in connection with any

8  sentencing proceeding in any criminal case that may be brought

9  against defendant by the USAO, any Cooperation Information.

10 Defendant agrees, however, that the USAO may use both Cooperation

11 Information and Plea Information: (1) to obtain and pursue leads to

12 other evidence, which evidence may be used for any purpose, including

13 any criminal prosecution of defendant; (2) to cross-examine defendant

14 should defendant testify, or to rebut any evidence offered, or

15 argument or representation made, by defendant, defendant's counsel,

16 or a witness called by defendant in any trial, sentencing hearing, or

17 other court proceeding; and (3) in any criminal prosecution of

18 defendant for false statement, obstruction of justice, or perjury.

19       b.   Not to use Cooperation Information against defendant

20 at sentencing for the purpose of determining the applicable guideline

21 range, including the appropriateness of an upward departure, or the

22 sentence to be imposed, and to recommend to the Court that

23 Cooperation Information not be used in determining the applicable

24 guideline range or the sentence to be imposed.  Defendant

25 understands, however, that Cooperation Information will be disclosed

26 to the United States Probation and Pretrial Services Office and the

27 Court, and that the Court may use Cooperation Information for the

28

purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2, 3, and 4 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

9.    Defendant understands the following:

a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.    Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.    Defendant cannot withdraw defendant's guilty pleas if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

1        d.   At this time the USAO makes no agreement or

2 representation as to whether any cooperation that defendant has

3 provided or intends to provide constitutes or will constitute

4 substantial assistance.  The decision whether defendant has provided

5 substantial assistance will rest solely within the exclusive judgment

6 of the USAO.

7        e.   The USAO's determination whether defendant has

8 provided substantial assistance will not depend in any way on whether

9 the government prevails at any trial or court hearing in which

10 defendant testifies or in which the government otherwise presents

11 information resulting from defendant's cooperation.

12                    NATURE OF THE OFFENSES

13   10.  Defendant understands that for defendant to be guilty of

14 the crime charged in Count One of the information, that is,

15 Conspiracy to Operate an Illegal Gambling Business, in violation of

16 Title 18, United States Code, Section 371, the following must be

17 true:

18        a.   Beginning in 2014, and continuing through on or about

19 February 7, 2020, there was an agreement between two or more persons

20 to commit the crime of Operating an Unlawful Gambling Business, in

21 violation of Title 18, United States Code, Section 1955;

22        b.   The defendant became a member of the conspiracy

23 knowing of at least one of its objects and intending to help

24 accomplish it; and

25        c.   One of the members of the conspiracy performed at

26 least one overt act on or after December 1, 2016, for the purpose of

27 carrying out the conspiracy.

28

1    11.   Defendant understands that for a defendant to be guilty of

2  Operating an Unlawful Gambling Business, in violation of Title 18,

3  United States Code, Section 1955, the following must be true:

4          a.   Defendant conducted a business consisting of unlawful

5  sports gambling;

6          b.   Sports gambling was illegal in the State in which

7  defendant conducted the business, namely, California;

8          c.   The business involved five or more persons who

9  conducted all or part of the business; and

10          d.   The business had been in substantially continuous

11  operation by five or more persons for more than thirty days, or had a

12  gross revenue of more than $2,000 in any single day.

13    12.   Defendant understands that for defendant to be guilty of

14  the crime charged in Count Two, that is, Subscribing to a False Tax

15  Return, in violation of Title 26, United States Code, Section

16  7206(1), the following must be true:

17          a.   Defendant signed and filed a tax return for the year

18  2018 that he knew contained false information as to a material

19  matter;

20          b.   The return contained a written declaration that it was

21  being signed subject to the penalties of perjury; and

22          c.   In filing the false tax return, the defendant acted

23  willfully.

24    13.   In order to prove the defendant acted "willfully," the

25  government must prove beyond a reasonable doubt that the defendant

26  knew federal tax law imposed a duty on him and the defendant

27  intentionally and voluntarily violated that duty.  A matter is

28  "material" if it has a natural tendency to influence, or is capable

11

1   of influencing, the decisions or activities of the Internal Revenue

2   Service.

3                              PENALTIES

4        14.  Defendant understands that the statutory maximum sentence

5   that the Court can impose for a violation of Title 18, United States

6   Code, Section 371, is: five years' imprisonment; a three-year period

7   of supervised release; a fine of $250,000 or twice the gross gain or

8   gross loss resulting from the offense, whichever is greatest; and a

9   mandatory special assessment of $100.

10       15.  Defendant understands that the statutory maximum sentence

11  that the Court can impose for a violation of Title 26, United States

12  Code, Section 7206(1), is: three years' imprisonment; a one-year

13  period of supervised release; a fine of $250,000 or twice the gross

14  gain or gross loss resulting from the offense, whichever is greatest;

15  and a mandatory special assessment of $100.

16       16.  Defendant understands, therefore, that the total maximum

17  sentence for all offenses to which defendant is pleading guilty is:

18  eight years imprisonment; a three-year period of supervised release;

19  a fine of $500,000 or twice the gross gain or gross loss resulting

20  from the offenses, whichever is greatest; and a mandatory special

21  assessment of $200.

22       17.  Defendant understands and agrees that as to Count Two, the

23  Court: (a) may order defendant to pay restitution in the form of any

24  additional taxes, interest, and penalties that defendant owes to the

25  United States based upon Count Two and any relevant conduct,

26  including unpaid taxes of $1,248,429.55 for tax years 2017 and 2018;

27  and (b) must order defendant to pay the costs of prosecution, which

28  may be in addition to the statutory maximum fine stated above.

                                12

18.   The Court will also order forfeiture of the property listed in the forfeiture notice in the information pursuant to 18 U.S.C. § 982.

19.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

20.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

21.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under

13

1  some circumstances, be mandatory; denial of citizenship; and denial

2  of admission to the United States in the future.  The Court cannot,

3  and defendant's attorney also may not be able to, advise defendant

4  fully regarding the immigration consequences of the felony

5  convictions in this case.  Defendant understands that unexpected

6  immigration consequences will not serve as grounds to withdraw

7  defendant's guilty pleas.

8                            FACTUAL BASIS

9       22.  Defendant admits that defendant is, in fact, guilty of the

10  offenses to which defendant is agreeing to plead guilty.  Defendant

11  and the USAO agree to the statement of facts provided below and agree

12  that this statement of facts is sufficient to support pleas of guilty

13  to the charges described in this agreement and to establish the

14  Sentencing Guidelines factors set forth in paragraph 24 below but is

15  not meant to be a complete recitation of all facts relevant to the

16  underlying criminal conduct or all facts known to either party that

17  relate to that conduct.

18       Beginning in 2014 and continuing to on or about February 7,

19  2020, in Los Angeles and Orange Counties, California, defendant

20  conspired with co-defendant Edon Yoshida Kagasoff and others to

21  conduct an unlicensed and illegal bookmaking business that took bets

22  for money on the outcome of sporting events from various persons at

23  agreed-upon odds.  The business (the "Nix Gambling Business"), which

24  defendant and co-defendant Kagasoff operated in violation of

25  California Penal Code Section 337(a) (prohibiting bookmaking within

26  the state of California), involved more than five persons who

27  conducted, financed, managed, supervised, directed, or owned all or

28  part of the business, including defendant, co-defendant Kagasoff,

K.A., M.F., M.O., D.S., and M.S.   The business remained in substantially continuous operation by at least five persons for at least six years and often had gross revenue of well over $2,000 on a single day.

Specifically, defendant, operating out of various locations in Los Angeles and Orange Counties, solicited and accepted customers for the Nix Gambling Business.   Defendant placed and accepted bets from others for the Nix Gambling Business himself, and also used other persons ("Agents") to placed and accepted bets from others for the NIX Gambling Business.   Defendant and co-defendant Kagasoff, and other co-conspirators working at their direction, would use websites and a call center controlled by Sand Island Sports to create accounts through which Nix Gambling Business's customers could place and track wagers.   Sand Island Sports was based in Costa Rica.   When defendant found a new customer who wanted to place wagers on sporting events, defendant, or one of his associates, contacted Sand Island Sports and arranged for an account to be set up for the customer.   After the account was established, defendant advised the customer as to the limits on his or her wagering activity, and referred the customer to the Sand Island Sports website (www.SandIslandSports.com) to allow California residents and others to place wagers on sporting events over the internet, in violation of California Penal Code Section 337a.   Defendant and others in the Sand Island Sports organization would keep track of the customers' wagering activity and win/loss record.   When a bettor won a bet, defendant or an associate paid the bettor based on the size of the bet and the odds that had been set by Sand Island Sports.   When a bettor lost, defendant or an associate collected the amounts due under the terms of the bet.   In all

instances, the Nix Gambling Business, rather than Sand Island Sports, paid the winnings to the bettors and retained almost all of the money collected from bettors as a result of their losses.  Defendant used bank accounts at Wells Fargo Bank ending in '3903 and '4006 (in the name of defendant and Nixy Enterprises, respectively) to pay and receive illicit proceeds from the Nix Gambling Business.  Defendant then caused the illicit proceeds to be transferred to accounts at Merrill Lynch ending in '7557 and '1462.

The following acts were committed in furtherance of the conspiracy, and to accomplish its objects:

1. On January 7, 2016, defendant received a check for $245,000 from a professional football player for gambling losses incurred by the football player.

2. On May 31, 2016, defendant received $4,000 from a coach in Major League Baseball for gambling losses incurred by the coach.

3. On November 18, 2016, by text message, defendant recruited a former professional football player to be an agent of the Nix Gambling Business by telling him to handle the communications with two new bettors participating in the NIX Gambling Business and agreeing to pay the former professional football player a "commission" on the losses of the two new bettors.

4. On November 5, 2018, by telephone, defendant advised Agent #3 to get rid of clients who did "prop betting" after Agent #4 told defendant that he had lost $10,000 on a client of the Nix Gambling Business who refused to pay.

5. On December 11, 2018, defendant received an $8,000 wire

transfer for gambling losses from a baseball analyst.

6. On January 24, 2019, by telephone, defendant NIX told a client that he is throwing a Super Bowl party for clients of the NIX Gambling Business, and that he had invited a former NBA player and Hawaiian Tropic girls.

7. On February 3, 2019, defendant NIX accepted a $5 million bet from a client of the NIX Gambling Business on the outcome of the Super Bowl.

8. On February 23, 2019, by text message, defendant agreed to reactivate the account of a sports broadcaster after the sports broadcaster told defendant that he was refinancing his home mortgage to obtain money to pay his outstanding gambling debt to defendant.

9. Responding to a request from a professional baseball player who already owed gambling debts to defendant, on September 14, 2019, by text message, defendant agreed to increase the baseball player's credit limit to allow the baseball player to wager additional sports bets.

Defendant admits that defendant also knowingly and willfully falsely reported his total taxable income to the Internal Revenue Service ("IRS") on his tax returns for tax years 2017 and 2018. Defendant admits that defendant knew that he had additional income in the following amounts that defendant knowingly and willfully failed to report on his tax returns:

//

//

| Tax Year | Reported Income | Unreported Income |
|----------|-----------------|-------------------|
| 2017 | $2,079,347 | $812,612.50 |
| 2018 | $1,724,552 | $654,329.25 |

For example, on or about October 11, 2019, in Orange County, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2018, which was filed with the IRS and verified by a written declaration that it was made under the penalties of perjury, which return defendant did not believe to be true and correct as to every material matter, in that defendant reported on line 10 that his total taxable income for calendar year 2018 was $1,724,552, when, in truth and in fact, as defendant then knew, his total taxable income for the year 2018 was at least $2,378,881.25. Defendant admits that the source of the unreported income was from the operation of the unlawful gambling business described above.

For purposes of relevant conduct, defendant also admits that on or about October 9, 2018, in Orange County, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2017, which was filed with the IRS and verified by a written declaration that it was made under the penalties of perjury, which return defendant did not believe to be true and correct as to every material matter, in that defendant reported on line 43 that his total taxable income for calendar year 2017 was $2,079,347, when, in truth and in fact, as defendant then knew, his total taxable income for the year 2017 was at least $2,891,959.50.

The false information provided by defendant was material in that it affected the IRS's calculation of the amount of income that defendant had received in 2017 and 2018, and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on the return and determining whether additional income tax was owed. Defendant acted willfully.  Defendant knew that the law required him to report all income accurately and to pay all income tax that was due and owing.  Defendant voluntarily and intentionally violated those duties.  As a result of the false information defendant provided, defendant owes additional taxes of $261,822 for tax year 2018 (before interest and penalties).  For purposes of relevant conduct, defendant also admits that he owes additional taxes of $355,527 for tax year 2017 (before interest and penalties).

<u>SENTENCING FACTORS</u>

23.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

24.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One:

Base Offense Level:                    12              [USSG § 2E3.1(a)(2)]

Count Two

Base Offense Level:                    20       [USSG §§ 2T1.1, 2T4.1(H)]

Failure to report/correctly
identify unlawful income              +2              [USSG § 2T1.1(b)(1)]

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

25.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

26.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    WAIVER OF CONSTITUTIONAL RIGHTS

27.  Defendant understands that by pleading guilty, defendant gives up the following rights:

          a.   The right to persist in a plea of not guilty.

          b.   The right to a speedy and public trial by jury.

          c.   The right to be represented by counsel — and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

28.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

29.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment

imposed by the Court, provided it is no more than the high-end of the Sentencing Guidelines range calculated by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,248,429.55; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

30.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

31.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the

1  exception that the USAO reserves the right to appeal the amount of

2  restitution ordered if that amount is less than $1,248,429.55.

3  RESULT OF WITHDRAWAL OF GUILTY PLEA

4  32.   Defendant agrees that if, after entering guilty pleas

5  pursuant to this agreement, defendant seeks to withdraw and succeeds

6  in withdrawing defendant's guilty pleas on any basis other than a

7  claim and finding that entry into this plea agreement was

8  involuntary, then (a) the USAO will be relieved of all of its

9  obligations under this agreement, including in particular its

10  obligations regarding the use of Cooperation Information; and (b) in

11  any investigation, criminal prosecution, or civil, administrative, or

12  regulatory action, defendant agrees that any Cooperation Information

13  and any evidence derived from any Cooperation Information shall be

14  admissible against defendant, and defendant will not assert, and

15  hereby waives and gives up, any claim under the United States

16  Constitution, any statute, or any federal rule, that any Cooperation

17  Information or any evidence derived from any Cooperation Information

18  should be suppressed or is inadmissible.

19  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

20  33.   Defendant agrees that if either count of conviction is

21  vacated, reversed, or set aside, the USAO may: (a) ask the Court to

22  resentence defendant on the remaining count of conviction, with both

23  the USAO and defendant being released from any stipulations regarding

24  sentencing contained in this agreement, (b) ask the Court to void the

25  entire plea agreement and vacate defendant's guilty plea on the

26  remaining count of conviction, with both the USAO and defendant being

27  released from all their obligations under this agreement, or

28  (c) leave defendant's remaining conviction, sentence, and plea

agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

34.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

35.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.  If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.  The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which

defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

36.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

37. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 24 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

38. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

39.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2          40.   The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     TRACY L. WILKISON
      United States Attorney

9

10

11     */s/ Jeff Mitchell*                         3/9/2022

12     JEFF MITCHELL
       Assistant United States Attorney            Date

13                                                 2/15/2022

14     WAYNE NIX                                   Date
       Defendant

15                                                 2/15/22

16     STEVE MADISON                               Date
       Attorney for Defendant Wayne Nix

17

18     //

19     //

20     //

21

22

23

24

25

26

27

28

                                28

1        CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charges and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19   _____        ___2-15-2022_____

20   WAYNE NIX                               Date
     Defendant

21

22

23   //

24   //

25   //

26

27

28

29

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am Wayne Nix's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     2/15/22
STEVE MADISON                        Date
Attorney for Defendant Wayne Nix

EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy to Operate an Illegal Gambling Business; 26 U.S.C. § 7206(1): Subscribing to a False Tax Return] |
| WAYNE JOSEPH NIX, and EDON YOSHIDA KAGASOFF, | |
| Defendants. | |

16      The United States Attorney charges:

17                          COUNT ONE

18                      [18 U.S.C. § 371]

19                     [ALL DEFENDANTS]

20  A.    INTRODUCTORY ALLEGATIONS

21      At times relevant to this Information:

22      1.    The operation of a sports gambling business in California

23  was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

24      2.    Defendant WAYNE JOSEPH NIX was a resident of Orange County,

25  California. Defendant NIX was a minor league baseball player from

26  1995 to 2001.

27      3.    Defendant EDON YOSHIDA KAGASOFF was a resident of Orange

28  County, California.

4.    Sometime after 2001, defendant NIX began operating a bookmaking business in the Los Angeles area that accepted and paid off bets from bettors in California and elsewhere in the United States on the outcomes of sporting events at agreed-upon odds (the "Nix Gambling Business").  Through contacts he had developed during his own career in professional sports, defendant NIX would create a client list of current and former professional athletes, and others.

5.    Defendant NIX used agents to expand the Nix Gambling Business. Agents were persons who placed and accepted bets from others for the Nix Gambling Business.

a.    Agents recruited and maintained their own bettors within the Nix Gambling Business.

b.    In some instances, defendant NIX would agree to bear the risk of paying, or covering, any money won by Agents' bettors as a result of their wagers.  In turn, defendant NIX would receive the majority of the money these bettors lost as a result of their wagers, and he would share with the Agents a portion of the money he so received.

c.    In other instances, defendant NIX would agree that the Agents would bear the risk of paying, or covering, any money won by Agents' bettors as a result of their wagers.  In turn, the Agents would receive the majority of the money these bettors lost as a result of their wagers, and the Agents would pay defendant NIX a fee per player per week.

d.    Defendant NIX recruited agents from his current roster of bettors by offering them a commission for new bettors.  Defendant NIX also recruited agents from competing bookmakers by offering the agents a larger commission and lower fees.

2

6.   Agents #1, #2, and #3 were each a former professional baseball player who had played in Major League Baseball ("MLB"). Agent #4 was a former minor league baseball player.

7.   Sand Island Sports operated Internet sports gambling websites, including www.sandislandsports.com and www.betprestige.com, hosted on servers primarily located outside the United States.  Sand Island Sports also operated toll-free telephone services (hereinafter, the "call center") to facilitate sports betting.  The Sand Island Sports websites and call center facilitated unlawful sports gambling by providing a platform to bookmakers to track bets placed by their clients.

8.   Sand Island Sports was based in Costa Rica, and was owned and operated by United States citizens.

B.   OBJECT OF THE CONSPIRACY

9.   Beginning in 2014 and continuing through on or about February 7, 2020, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants NIX and KAGASOFF knowingly conspired with each other and others known and unknown to the United States Attorney to conduct, finance, manage, supervise, direct, and own an illegal gambling business, in violation of California Penal Code Section 337a, which business involved at least five persons who conducted, financed, managed, supervised, directed, and owned all or part of the business; had been in substantially continuous operation by at least five persons for a period in excess of thirty days; and had gross revenue of more than $2,000 in a single day, all in violation of Title 18, United States Code, Section 1955(a).

1   C.   THE MANNER AND MEANS OF THE CONSPIRACY

2        10.   The object of the conspiracy was carried out, and to be

3   carried out, in substance, as follows:

4             a.   Beginning in 2014, defendant KAGASOFF would work for

5   the Nix Gambling Business as an agent.  Defendant KAGASOFF would

6   place and accept bets from others and help defendant NIX maintain the

7   Nix Gambling Business by, among other things, demanding and

8   collecting money owed to the Nix Gambling Business by bettors and

9   others.

10            b.   Agents #1, #2, #3, and #4 would each be an agent of

11   the Nix Gambling Business.

12            c.   As part of the Nix Gambling Business, defendants NIX

13   and KAGASOFF, and other co-conspirators known and unknown working at

14   defendants NIX and KAGASOFF's direction, would use the Sand Island

15   Sports websites and call center to create accounts through which

16   wagers would be placed and tracked, and set credit limits for

17   bettors.

18            d.   Defendants NIX and KAGASOFF, and other co-conspirators

19   known and unknown working at defendants NIX and KAGASOFF's direction,

20   would provide bettors account numbers and passwords for the Sand

21   Island Sports website, and directed the bettors to use the Sand

22   Island Sports websites to place bets with the Nix Gambling Business.

23            e.   Bettors would place bets online through the Sand

24   Island Sports websites, through the Sand Island Sports call center,

25   through defendants NIX and KAGASOFF, and through the agents.

26            f.   Defendants NIX and KAGASOFF, and other co-conspirators

27   known and unknown working at defendants NIX and KAGASOFF's direction,

28   would pay winnings to, and collect losses from, the bettors, and in

4

doing so would receive more than $2,000 in gross revenue in a single day.  In all instances, the NIX Gambling business, rather than Sand Island Sports, paid the winnings to the bettors and retained almost all of the money collected from bettors as a result of their losses.

g.   In exchange for use of the Sand Island Sports website and call center, defendant NIX paid a fee to Sand Island Sports for each active bettor.

D.   OVERT ACTS

11.   In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendants NIX and KAGASOFF committed and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On January 7, 2016, defendant NIX received a check for $245,000 from a professional football player for gambling losses incurred by the football player.

Overt Act No. 2:   On May 31, 2016, defendant NIX received $4,000 from a coach in MLB for gambling losses incurred by the coach.

Overt Act No. 3:   On November 18, 2016, by text message, defendant NIX recruited a former professional football player to be an agent of the Nix Gambling Business by telling him to handle the communications with two new bettors participating in the Nix Gambling Business and agreeing to pay the former professional football player a "commission" on the losses of the two new bettors.

Overt Act No. 4:   On January 30, 2017, by text message, defendant KAGASOFF told Agent #1 that Agent #1 owed $2,318 for his personal gambling losses and provided balances, i.e., total amounts due, for two of Agent #1's clients.

1     <u>Overt Act No. 5:</u>  On April 1, 2017, by text message, defendant

2  KAGASOFF provided a former professional baseball player the Sand

3  Island Sports website address and an account number, and told him

4  that the maximum wager he could place on a game was $25,000.

5     <u>Overt Act No. 6:</u>  On July 8, 2017, by text message, defendant

6  KAGASOFF told Agent #2 that defendant KAGASOFF would call defendant

7  NIX to discuss a potential loan for Agent #2 to enable Agent #2 to

8  pay winnings to a client who wagered $1 million annually with the Nix

9  Gambling Business through Agent #2, and Agent #2 agreed to let

10  defendant KAGASOFF drive Agent #2's Ferrari for a month if defendant

11  KAGASOFF was able to convince defendant NIX to lend him the money.

12     <u>Overt Act No. 7:</u>  On November 5, 2018, by telephone, defendant

13  NIX advised Agent #3 to get rid of clients who did "prop betting"

14  after Agent #4 told defendant NIX that he had lost $10,000 on a

15  client of the Nix Gambling Business who refused to pay.

16     <u>Overt Act No. 8:</u>  On December 11, 2018, defendant NIX received

17  an $8,000 wire transfer for gambling losses from a baseball analyst.

18     <u>Overt Act No. 9:</u>  On January 12, 2019, by text message,

19  defendant KAGASOFF agreed to meet Agent #4 later that day to collect

20  money that Agent #4 had collected from a client.

21     <u>Overt Act No. 10:</u>  On January 24, 2019, by telephone, defendant

22  NIX told a client that he was throwing a Super Bowl party for clients

23  of the NIX Gambling Business, and that he had invited a former NBA

24  player and Hawaiian Tropic girls.

25     <u>Overt Act No. 11:</u>  On February 3, 2019, defendant NIX accepted

26  a $5 million bet from a client of the NIX Gambling Business on the

27  outcome of the Super Bowl.

28

1    Overt Act No. 12:   On February 23, 2019, by text message,
2    defendant NIX agreed to reactivate the account of a sports
3    broadcaster after the sports broadcaster told defendant NIX that he
4    was refinancing his home mortgage to obtain money to pay his
5    outstanding gambling debt to defendant NIX.

6    Overt Act No. 13:   Responding to a request from a professional
7    baseball player who already owed gambling debts to NIX, on September
8    14, 2019, by text message, defendant NIX agreed to increase the
9    baseball player's credit limit to allow the baseball player to wager
10   additional sports bets.

11   Overt Act No. 14:   On November 15, 2019, by text message,
12   defendant KAGASOFF told a business manager for a professional
13   basketball player that defendant KAGASOFF would increase the maximum
14   dollar amount the business manager could wager on "NBA games" to
15   $25,000 per game.

16   //
17   //
18   //
19
20
21
22
23
24
25
26
27
28

COUNT TWO

[26 U.S.C. § 7206(1)]

[DEFENDANT NIX]

On or about October 11, 2019, in Orange County, within the Central District of California, and elsewhere, defendant WAYNE JOSEPH NIX, a resident of Orange County, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2018, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which return defendant NIX did not believe to be true and correct as to every material matter, in that defendant NIX reported, on line 10, that his taxable income for calendar year 2018 was $1,724,552, when, in truth and in fact, as defendant NIX then knew, his taxable income for the year 2018 was substantially higher than that amount.

1          FORFEITURE ALLEGATION

2        [18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c)]

3        12.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 1955(d) and Title 28, United States Code,

7   Section 2461(c), in the event of any defendants' conviction of the

8   offense set forth in Count One of this Information.

9        13.   The defendants, if so convicted, shall forfeit to the

10  United States of America the following:

11             (a)   Any property, including money, used in such offense,

12  and any property traceable to such property; and

13             (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16       14.   Pursuant to Title 21, United States Code, Section 853(p),

17  as incorporated by Title 18, United States Code, Section 982(b)(1),

18  and Title 18, United States Code, Section 982(b)(2), the defendants,

19  if so convicted, shall forfeit substitute property, if, by any act or

20  omission of the defendants, the property described in the preceding

21  paragraph, or any portion thereof: (a) cannot be located upon the

22  exercise of due diligence; (b) has been transferred, sold to, or

23  deposited with a third party; (c) has been placed beyond the

24  //

25  //

26  //

27

28

9

1  jurisdiction of the court; (d) has been substantially diminished in

2  value; or (e) has been commingled with other property that cannot be

3  divided without difficulty.

4                                    TRACY L. WILKISON
                                     United States Attorney
5

6

7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
10                                   Chief, Major Frauds Section

11                                   MONICA E. TAIT
                                     Assistant United States Attorney
12                                   Deputy Chief, Major Frauds Section

13                                   JEFF MITCHELL
                                     Assistant United States Attorney
14                                   Major Frauds Section

15                                   DAN G. BOYLE
                                     Assistant United States Attorney
16                                   Asset Forfeiture Section

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, **Simonia White**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT FOR DEFENDANT WAYNE NIX**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:     ☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

**Steve Madison, Esq.**
**865 South Figueroa Street, 10th Floor**
**Los Angeles, CA 90017**

This Certificate is executed on **March 10, 2022**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Simonia White*
Simonia White
Legal Assistant